IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSHUA G. FRANKLIN, SR., | |
| Plaintiff, | **8:16CV470** |
| vs. | |
| SCOTT FRAKES, Director, In his Individual and Official Capacity; DIANE SABATKA-RINE, Deputy Director, In her Individual and Official Capacity; FRED BRITTEN, Warden, In his Individual and Official Capacity; BRAD HANSEN, Warden, In his Individual and Official Capacity; et al.; | **MEMORANDUM AND ORDER** |
| Defendants. | |

Plaintiff filed a Complaint on October 17, 2016. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 7.) The court ordered Plaintiff to file an amended complaint because his Complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure. (Filing No. 9.) The court now conducts review of Plaintiff's Amended Complaint (Filing No. 19).

## I.  BACKGROUND

This case is essentially a continuation of *Franklin v. Kenney, et al.*, 4:14CV3243 (D. Neb. 2014). In *Franklin*, the American Civil Liberties Union Foundation - Nebraska filed suit on behalf of Plaintiff against several prison officials for multiple assaults Plaintiff suffered from members of the Peckerwoods prison gang while confined at the Nebraska State Penitentiary ("NSP"). (Filing Nos. 1, 28, 4:14CV3243.) Plaintiff alleged that the defendants committed both federal constitutional and state law violations. (*Id.*) In response, the defendants

filed a summary judgment motion arguing that Plaintiff failed to (1) comply with the Nebraska State Tort Claims Act and (2) exhaust his administrative remedies pursuant to the Prison Litigation Reform Act. (Filing Nos. 41, 42, 4:14CV3243.) Plaintiff subsequently filed a motion to dismiss the case without prejudice. (Filing No. 48, 4:14CV3243.) The court granted Plaintiff's motion to dismiss and denied the defendants' summary judgment motion as moot. (Filing No. 49, 4:14CV3243.)

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff is a prisoner currently confined at the Diagnostic Evaluation Center ("DEC")[1] in Lincoln, Nebraska. He names in his Complaint multiple defendants including the previous and current directors of the Nebraska Department of Correctional Services ("NDCS") as well as wardens, deputy wardens, unit administrators, unit managers, case managers, and unidentified John Does employed at various correctional facilities within NDCS. (Filing No. 19 at CM/ECF pp. 2-15.) Plaintiff sues Michael L. Kenney and Mario Peart solely in their individual capacities, and the rest of Defendants in their official and individual capacities. (*Id*.)

### Assaults

In October of 2012, Anthony Stranghoener ("Stranghoener"), another inmate and a member of the Peckerwoods prison gang, assaulted Plaintiff at the Sarpy County Jail. (Filing No. 19 at CM/ECF p. 19.) Plaintiff suffered a broken jaw, an orbital fracture, and a detached retina from the assault. (*Id*.) On November 20, 2012, Franklin was transferred to DEC. (*Id*. at CM/ECF p. 20.) Plaintiff alleges

---

[1] *See* Nebraska Inmate Population locator *at* http://dcs-inmatesearch.ne.gov/Corrections (May 11, 2017).

that he alerted DEC Assistant Warden Rine[2] ("Rine"), DEC Warden Dennis Bakewell ("Bakewell"), and John Does 1-4[3] about the assault and his fear of the Peckerwoods. (*Id.* at CM/ECF pp. 20-21.) He alleges that he was assured by staff at DEC that he and Stranghoener would be placed on "central monitoring" in order to keep Stranghoener away from Plaintiff. (*Id.* at CM/ECF p. 21.) Central monitoring, according to Plaintiff, is "the internal inmate tracking system that NDCS uses to identify which inmates may be assigned to which facilities based on the nature of their crime and any known conflicts with other inmates." (*Id.*)

In February of 2013, Plaintiff was transferred to NSP, where he was assaulted again by Stranghoener and other members of the Peckerwoods in April of 2013. (*Id.* at CM/ECF pp. 21-22.) Plaintiff returned to DEC in May of 2013, due to his parole revocation, where he expressed his fear of the Peckerwoods to Rine and DEC Warden Fred Britten ("Britten")[4]. (*Id.* at CM/ECF pp. 22-23.) Plaintiff alleges that he advised them that he feared being transferred to NSP or to the Tecumseh State Correctional Institution ("TSCI") because of Stranghoener and the Peckerwoods presence at those facilities. (*Id.*) Plaintiff asserts that Britten responded, "You will not be classified at NSP or TSCI." (*Id.* at CM/ECF p. 23.) However, Plaintiff was transferred to NSP on December 31, 2013, where he was assaulted nine days later by a member of the Peckerwoods, Jason Warrington. (*Id.*) Plaintiff suffered a head injury and cervical strain from the assault. (*Id.*) Plaintiff was treated at the medical clinic at DEC, where he again expressed his fears to

---

[2] The court assumes that, based upon his prior suit, Plaintiff alerted Charles Rine, assistant warden at DEC, not Diane Sabatka-Rine, former warden at NSP and current deputy director of NDCS.

[3] Plaintiff states that John Does 1-4 are case managers, shift sergeants, and other employees who processed his inmate interview requests during that time. (Filing No. 19 at CM/ECF p. 5.)

[4] According to Plaintiff, Britten replaced Bakewell as DEC Warden in approximately April of 2013. (*Id.* at CM/ECF p. 2.)

Rine, Britten, and John Does 1-4. (*Id.* at CM/ECF pp. 23-24.) On May 14, 2014, Plaintiff was assaulted again upon his return to NSP. (*Id.* at CM/ECF p. 24.)

Plaintiff alleges that the inmate populations of DEC and NSP were overcrowded by specific percentages during this period of time. (*Id.* at CM/ECF pp. 21-24.) He asserts that Bakewell/Britten, Rine, and/or John Does 1-4 failed to notify NSP of his central monitoring "and/or Warden Sabatka-Rine and/or Does 5-8 to take the appropriate actions to ensure Plaintiff's safety." (*Id.* at CM/ECF pp. 21-22, 23.) Plaintiff alleges that he notified Sabatka-Rine, upon his transfer to NSP in February of 2013, of his central monitoring and about his safety concerns. (*Id.* at CM/ECF p. 8.)

On July 15, 2015, Plaintiff was transferred to the Omaha Correctional Center ("OCC"). (*Id.* at CM/ECF p. 25.) Plaintiff alleges that he expressed his concerns and fears of being placed in general population with members of the Peckerwoods to "the second shift supervisor," Case Manager McClyment, and Unit Administrator Weiss. (*Id.* at CM/ECF pp. 25-26.) However, on July 17, 2015, Plaintiff was placed in general population at OCC. (*Id.* at CM/ECF p. 25.) On August 21, 2015, Plaintiff was assaulted by a member of the Peckerwoods. (*Id.*)

**Sexual Assault**

In October of 2015, Plaintiff was transferred to the Lincoln Correctional Center ("LCC"), where he was placed in the protective custody housing unit. (*Id.* at CM/ECF p. 27.) Plaintiff alleges that he was placed in a cell with a four-time convicted sex offender, who sexually assaulted Plaintiff on October 28, 2015. (*Id.*) Plaintiff, thereafter, was forced to return to the protective housing unit at LCC despite his refusal. (*Id.* at CM/ECF pp. 27-28.) He claims other inmates extorted him after they found out about the sexual assault and that staff failed to place those inmates on central monitoring. (*Id.* at CM/ECF pp. 27, 29.) Plaintiff alleges that he

inquired why he had to return to the unit where he feared for his safety, and Deputy Warden Heckman informed him "that is the way it works. We do not have enough RHU beds to house everyone that fears for their safety. We will work with you to separate you from those you fear on A-Unit." (*Id.* at CM/ECF pp. 27-28.)

## Medical

Plaintiff alleges that he experiences vision and memory issues, pain, and emotional distress and nightmares from the assaults. (*Id.* at CM/ECF pp. 24, 37) He also physically suffers from neck pain and migraines. (*Id.* at CM/ECF p. 29.) On December 4, 2015, at his request, "medical" restarted propranolol and Excedrin for Plaintiff. (*Id.* at CM/ECF p. 28.) On December 15, 2015, Plaintiff asked medical to see a doctor because of neck pain and because his migraines were causing dizziness and "blackouts." (*Id.*) Medical responded "sick call to be scheduled." (*Id.*) On December 22, 2015, Plaintiff sent another request to medical because of his "neck problems" and his worsening migraines. (*Id.*) Medical responded that he was on the schedule. (*Id.*) Because he had yet to be seen, Plaintiff sent another request on January 1, 2016. (*Id.*) Medical staff responded, "scheduled," on January 28, 2016. (*Id.*) On February 26, 2016, an MRI or CAT scan was performed on Plaintiff's head and, as of that date, doctors were waiting to review it. (*Id.* at CM/ECF p. 29.)

Plaintiff claims that, on April 6, 2016, he was rescheduled for a sick call at LCC due to staff shortage.[5] (*Id.* at CM/ECF p. 31.) According to Plaintiff, he had serious medical problems that he needed to see medical staff about that day,

---

[5] Plaintiff also makes a general allegation that on August 24, 2015, he asked to have his medications refilled, and the nurse supervisor responded that he was scheduled and that "it takes 2-3 weeks to see a provider at this time." ([Filing No. 19 at CM/ECF p. 26](#).) He also generally alleges that on March 31, 2016, he requested for a second time that his albuterol inhaler be refilled because it had not been refilled upon his first request two weeks earlier. (*Id.* at CM/ECF p. 30.)

including neck pain and severe migraines. (*Id*.) LCC Unit Manager Tan denied Plaintiff's subsequent "emergency" grievance, finding that Plaintiff was not in immediate danger of being "subjected to substantial risk of personal injury or serious irreparable harm." (*Id*.) Plaintiff states that was not the only time that he and other inmates were rescheduled to see medical due to staff shortage. (*Id*.)

In an apparent effort to rectify the exhaustion requirement from Case No. 4:14CV3243, Plaintiff alleges that he presented all of his complaints through the grievance procedure. (*Id*. at CM/ECF p. 17.) His allegations are replete with his "requests" and grievances to prison officials about the foregoing issues. (*Id*. at CM/ECF pp. 19-31.) Condensed and summarized, Plaintiff alleges that Defendants violated his rights through the following: failure to protect; failure to train; deliberate indifference to serious medical needs; retaliation; and on several state law grounds. (*Id*. at CM/ECF pp. 33-45.) He seeks the following from the court: temporary and permanent injunctive relief, declaratory relief, compensatory and punitive damages, and "injunctive relief issued in the order of releasing inmates eligible to be released from prison, to reduce overcrowding, and all such further relief as the court may deem just and proper." (*Id*. at CM/ECF p. 47.)

## II.  APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III.  DISCUSSION

### A.  Sovereign Immunity

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th

Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity.

Plaintiff sues multiple state employees for monetary damages. The Eleventh Amendment bars his claims against them in their official capacities and those claims must be dismissed.

## B. Moot Claims

Plaintiff is currently confined at DEC. Several of Defendants no longer work for NDCS and, if they do, they are not employed at DEC. Plaintiff's claims for injunctive and declaratory relief against those individuals are moot. *See Glick v. Henderson*, 855 F.2d 536, 540-41 (8th Cir. 1988) (injunctive relief impossible against doctor no longer employed at the prison); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (inmate's claims for declaratory and injunctive relief moot when he was transferred to another facility). Accordingly, Plaintiff's claims for declaratory and injunctive relief must be dismissed as moot against all Defendants *excluding* current NDCS Director Scott Frakes[6], current DEC Warden

---

[6] *See Randolph v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) (relocated prisoner's claim could proceed against director of state department of corrections because director had authority over all facilities, and injunction against director would have effect no matter where in the state correctional system prisoner was located).

Fred Britten, DEC Assistant Warden Charles Rine[7], and DEC employees John Does 1-4.

## C. Section 1983 Claims[8]

### 1. Failure to Protect

Plaintiff asserts Eighth Amendment failure-to-protect claims based upon the multiple assaults that he suffered at NSP and OCC from members of the Peckerwoods and upon the sexual assault that he suffered at LCC from his cellmate.

The Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). A prison official is deliberately indifferent if he "knows of and disregards" a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 837. There is both an objective component and a subjective component to a claim of deliberate indifference: (1) whether a substantial risk to the inmate's safety existed, and (2) whether the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citing *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir.2010)). The subjective component requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he

---

[7] The court is unaware whether Rine is still employed at DEC, but out of an abundance of caution, includes him here.

[8] The court understands Plaintiff's allegations of overcrowding and inadequate staffing to be encompassed within the claims below. That is, Defendants' deliberate indifference resulted from overcrowding and inadequate staffing issues.

must also draw the inference. *Id.* Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk. *Id.*

With regard to the assaults from members of the Peckerwoods, Plaintiff has set forth sufficient allegations to state plausible failure-to-protect claims against former DEC Warden Dennis Bakewell, current DEC Warden Fred Britten, DEC Assistant Warden Charles Rine, DEC employees John Does 1-4, former NSP Warden Diane Sabatka-Rine, NSP employees John Does 5-8, OCC "second shift supervisor" during July of 2015, OCC Case Manager McClyment, and OCC Unit Administrator Weiss. Liberally construed, Plaintiff's allegations suggest that these are the individuals who knew the Peckerwoods posed a continued threat to Plaintiff, and yet, failed to separate and protect him from those individuals, albeit through central monitoring or some other course of action. The court cautions Plaintiff that this is only a preliminary determination based on his allegations, and is not a determination of the merits of his claims or potential defenses thereto.

With respect to the sexual assault from Plaintiff's cellmate, the court first questions whether this claim is even properly joined in this action. Nevertheless, the court finds that Plaintiff's allegations are insufficient. While Plaintiff's former cellmate may be a four-time convicted sex offender, Plaintiff does not allege that anyone actually knew that Plaintiff's cellmate posed a substantial risk of harm to Plaintiff. Without more, Plaintiff's allegations are insufficient. *See similarly*, *Webb v. Lawrence Cty*, 144 F.3d 1131, 1135 (8th Cir. 1998) (plaintiff sexually assaulted by cellmate, a known sex offender; no evidence that defendants were deliberately indifferent to plaintiff's safety because defendants did not actually know that cellmate posed a substantial risk of harm to plaintiff). For the sake of completeness, so too are Plaintiff's allegations insufficient that other inmates "extorted" him after learning of the sexual assault, particularly considering Deputy

Warden Heckman's response that they would work with Plaintiff to separate him from those he feared. Plaintiff makes no allegations of incidents thereafter.

### 2. Deliberate Indifference to Serious Medical Needs

Plaintiff asserts Eighth Amendment claims of deliberate indifference to his serious medical needs against unidentified medical staff. The court infers that these unidentified individuals are John Does 9-10, employees at LCC and/or TSCI. (*See* Filing No. 19 at CM/ECF p. 5.)

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (internal citations omitted).

Liberally construed, Plaintiff asserts that medical staff delayed treatment for his neck pain and migraines. On December 4, 2015, restarted propranolol[9] and Excedrin for Plaintiff. However, Plaintiff requested to see a doctor for more than a month thereafter because of his worsening symptoms, namely dizziness and "blackouts" due to migraines. The court infers from Plaintiff's allegations that his continued symptoms resulted in the MRI or CAT scan performed on his head on February 26, 2016. These allegations suggest that "medical," or John Does 9-10,

---

[9] Propanolol is a beta blocker used to reduce the frequency of migraine headaches. *Pogue v. Colvin*, 2014 WL 5781141, at *8 (W.D. Mo. Nov. 6, 2014).

deliberately disregarded Plaintiff's objectively serious medical needs. The court cautions Plaintiff that this is only a preliminary determination based on his allegations, and is not a determination of the merits of his claims or potential defenses thereto.[10]

### 3. Failure to Train

Plaintiff attempts to pursue recovery from several of Defendants based on their supervisory roles at NDCS and at the correctional facilities within NDCS. A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (citing *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). Rather, a supervisor's liability arises if:

> he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

---

[10] To be clear, Plaintiff's allegations that he did not receive timely refills of medication on two occasions are insufficient to state a claim. These isolated incidents may rise to the level of negligence, but they do not rise to the level of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that mere negligence or medical malpractice are insufficient to rise to a constitutional violation). *See e.g.*, *Kenion v. Kiby*, 2015 WL 2345653, at *2 (W.D.N.C. May 14, 2015) (citing cases). The same is true for his allegations of rescheduled sick calls. He alleges only one specific incident. Nor does Plaintiff allege any harm suffered in either regard. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quotation omitted).

*Tlamka*, 244 F.3d at 635 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin*, *supra* 1338.

The court will allow Plaintiff's failure-to-train claims to proceed in tandem with Plaintiff's failure-to-protect claims against the same Defendants *excluding* John Does 1-8, who the court infers have no supervisory role. Plaintiff sets forth primarily vague and conclusory allegations against the remaining Defendants who exercise[d] supervisory roles at the correctional facilities, and to the extent he states anything specific, it is with regard to their responses to his grievances. Defendants' denial of Plaintiff's grievances do not state a substantive constitutional claim. *See Lomholt v. Holder*, 287 F.3d 683 (8th Cir. 2002). Moreover, Plaintiff does not allege any personal involvement by any Defendant in the underlying incidents who the court has not already allowed his claims to proceed against.

### 4. Retaliation

Plaintiff states that Defendants have retaliated against him for filing grievances and litigation by preventing his access to the courts, failing to transfer him to a different NDCS facility, and "refusing to provide protection." (*See* Filing No. 19 at CM/ECF pp. 44-45.) These vague, conclusory allegations fail to state a claim upon which relief may be granted, specifically on whether there is any causal connection between his First Amendment protected activity of filing grievances and the adverse actions he alleges he suffered. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (setting forth elements for retaliation).[11]

---

[11] The court also observes that Plaintiff has been confined at nearly every correctional facility within NDCS in approximately five years. Moreover, "[a]

**D. State Law Claims**

Plaintiff alleges tort claims under state law based upon the same facts and circumstances as his federal constitutional claims. (*See* Filing No. 19 at CM/ECF pp. 37-41.) The court reserves any ruling regarding whether it will exercise supplemental jurisdiction over these claims.

## IV.  TEMPORARY INJUNCTION REQUEST

Plaintiff requests a temporary injunction. (*See* Filing No. 19 at CM/ECF p. 47.) In *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), the court clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id*. at 114. "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). "At base, the question is whether the balance of equities so favors the

---

denial of access to the courts without cognizable injury is insufficient to support a claim under § 1983," *Sabers v. Delano*, 100 F.3d 82, 83 (8th Cir. 1996) (per curiam). Plaintiff has no cognizable injury from any infringement on his access to the courts because the court now considers his claims.

movant that justice requires the court to intervene to preserve the status quo until the merits are determined. . . ." *Dataphase*, 640 F.2d at 113.

In consideration of, Plaintiff's current confinement at DEC, at which none of the incidents transpired; that the last assault from any member of the Peckerwoods occurred almost two years ago; and that Plaintiff received an MRI or CAT scan of his head, the court finds that Plaintiff has not satisfied his burden to show the threat of irreparable harm. Further, if Defendants violated his rights, such harm can be compensated by money damages. The court sees no reason to "intervene to preserve the status quo until the merits are determined . . . ." *Dataphase*, 640 F.2d at 113. Accordingly, Plaintiff's request for a temporary injunction is denied.

## V.  REQUEST FOR COUNSEL

Plaintiff requests the appointment of counsel. (Filing No. 19 at CM/ECF p. 46.) The court cannot routinely appoint counsel in civil cases. *In Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id*. Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

IT IS THEREFORE ORDERED that:

1.      The following claims may proceed to service of process:

a.     Plaintiff's Eighth Amendment failure-to-protect and failure-to-train claims for *injunctive and declaratory relief* against Defendants Fred Britten and Charles Rine in their *official and individual capacities*.

b.     Plaintiff's Eighth Amendment failure-to-protect claims for *monetary relief* against Defendants Dennis Bakewell, Fred Britten, Charles Rine, Diane Sabatka-Rine, McClyment, and Weiss in their *individual capacities*.

c.     Plaintiff's Eighth Amendment failure-to-train claims for *monetary relief* against Defendants Dennis Bakewell, Fred Britten, Charles Rine, Diane Sabatka-Rine, McClyment, and Weiss in their *individual capacities*.

2.     **Plaintiff must identify John Does 1-10 and the OCC "second shift supervisor" during July of 2015 before his claims against them can proceed to service of process. Plaintiff will have 30 days from the date of this Memorandum and Order to take reasonable steps to identify John Does 1-10 and the OCC "second shift supervisor" during July of 2015 and notify the court of their names, after which the court will initiate service of process. Failure to do so will result in dismissal of the following claims without prejudice and without further notice.** The following claims may proceed to service of process against these Defendants once identified:

a.     Plaintiff's Eighth Amendment failure-to-protect claims for *injunctive and declaratory relief* against John Does 1-4 in their *official and individual capacities*.

b.     Plaintiff's Eighth Amendment failure-to-protect claims for *monetary relief* against John Does 1-4, John Does 5-8, and the OCC "second shift supervisor" during July of 2015 in their *individual capacities*.

c. Plaintiff's Eighth Amendment failure-to-train claim for *monetary relief* against the OCC "second shift supervisor" during July of 2015 in his/her *individual capacity*.

d. Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs for *monetary relief* against John Does 9-10 in their *individual capacities*.

3. Plaintiff's remaining federal claims against Defendants are dismissed for the reasons set forth in this Memorandum and Order, with the caveat that any individual defendant will be reinstated if later identified as one of the John Does.

4. Plaintiff's request for a temporary injunction is denied.

5. Plaintiff's request for the appointment of counsel is denied without prejudice to reassertion.

6. The clerk of the court is directed to add Charles Rine, Assistant Warden and to reinstate McClyment, Case Manager (previously McClymont, Lieutenant) as defendants in this matter.

7. For service of process on Defendants Fred Britten and Charles Rine in their official capacities, the clerk of the court is directed to complete 2 summons forms and 2 USM-285 forms for Defendants Fred Britten and Charles Rine using the address "Office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509," and forward them together with a copy of the Amended Complaint (Filing No. 19) and a copy of this Memorandum and Order to the Marshals Service. The Marshals Service shall serve Defendants Fred Britten and Charles Rine in their official capacities at the Office of the Nebraska Attorney General,

2115 State Capitol, Lincoln, NE 68509. *See* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-510.02 (Reissue 2016).[12]

8.     For service of process on Defendant Fred Britten in his individual capacity, the clerk of the court is directed to complete a summons form and a USM-285 form for Defendant Fred Britten using the address "Diagnostic and Evaluation Center, 3220 West Van Dorn Street, Lincoln, NE 68522" and forward them together with a copy of the Amended Complaint (Filing No. 19) and a copy of this Memorandum and Order to the Marshals Service. The Marshals Service shall serve Defendant Fred Britten personally in his individual capacity at the Diagnostic and Evaluation Center, 3220 West Van Dorn Street, Lincoln, NE 68522.  Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure  4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

9.     For service of process on Defendants "Case Manager McClyment" and "Unit Administrator Weiss" in their individual capacities, the clerk of the court is directed to complete 2 summons forms and 2 USM-285 forms for Defendants "Case Manager McClyment" and "Unit Administrator Weiss" using the address "Omaha Correctional Center, 2323 Avenue J Street, Omaha, NE 68110" and forward them together with a copy of the Amended Complaint (Filing No. 19) and a copy of this Memorandum and Order to the Marshals Service. The Marshals Service shall serve Defendants "Case Manager McClyment" and "Unit Administrator Weiss" personally in their individual capacities at the Omaha Correctional Center, 2323 Avenue J Street, Omaha, NE 68110.  Service may also

---

[12] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

10.     The clerk of the court is directed to obtain the last-known addresses for Defendants Charles Rine, Dennis Bakewell, and Diane Sabatka-Rine from the United States Marshals Service for service of process on Defendants Charles Rine, Dennis Bakewell, and Diane Sabatka-Rine in their individual capacities.  Once such addresses are obtained, the clerk of the court is directed to complete 3 summons forms and 3 USM-285 forms for Defendants Charles Rine, Dennis Bakewell, and Diane Sabatka-Rine using the addresses provided by the Marshals Service and forward them together with a copy of the Amended Complaint (Filing No. 19) and a copy of this Memorandum and Order to the Marshals Service for service of process on Defendants Charles Rine, Dennis Bakewell, and Diane Sabatka-Rine in their individual capacities. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

11.     The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

12.     The clerk of the court is directed to file under seal any documents containing the last-known personal addresses for Defendants Charles Rine, Dennis Bakewell, and Diane Sabatka-Rine.

13.     The clerk of the court is directed to set the following pro se case management deadline: June 12, 2017: check if Plaintiff identified individuals in paragraph 2.

14.    The clerk of the court is directed to set the following pro se case management deadline: August 9, 2017: check for completion of service of process.

Dated this 11th day of May, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge